THE TOWN OF TROY v. THE CHESHIRE RAIL ROAD COMPANY.

Towns have a qualified interest in the roadways and bridges they have erected, and may maintain an action upon the case for the destruction or obstruction of the road, or the conversion of the materials.

Where a statute authorizes the doing of certain acts, and provides a remedy for the recovery of damages occasioned thereby, the party injured is confined to the statute remedy for such damages. If the statute remedy extends only to a part of the injury which may be occasioned, the injured party may have his action at common law for the residue.

In case for a nuisance, if the act done is necessarily injurious, and is of a permanent nature, the party injured may, at once, recover his damages for the whole injury.

If the act done is not necessarily injurious, or if it is contingent whether further injury may arise, the plaintiff can recover damages only to the date of his writ.

If some damages necessarily result to the plaintiff, in judgment of law, from the acts complained of, the declaration will be sustained, on motion in arrest of judgment, without an allegation of special damages.

CASE. The first count stated, that on the tenth day of July, 1847, there was a public highway in Troy, leading from Troy village towards Keene, and which the town was liable to repair; and there was upon the highway, and forming a part of it, near, &c., a valuable stone bridge, in good repair, and suitable for the accommodation of the public; that the railroad company had built a railroad passing near to, and partly upon and over, the said highway, before the day aforesaid, and were proceeding in the construction of their railroad, and on said day did, in constructing their railroad, cause obstruction and injury to the said highway and to said bridge, by demolishing and destroying the bridge, and converting to their own use, the materials thereof, and by erecting, upon the site of the bridge, a railroad bridge, impassable by the public travel, and by occupying with the rails, embankments and excavations of the railroad, a part of the highway, seventy rods long, lying northerly of Cobb's bridge, so called, and the railroad bridge, and by placing upon

another part of said highway, lying northerly of the railroad bridge, a quantity of large stones, and by erecting upon and along the travelled part of the highway, near, &c., a fence thirty rods long, by means of which the highway was, in the travelled part thereof, narrowed, and rendered steep, uneven, inconvenient, difficult and unsafe to pass; of all which. the said railroad company, on the twenty-ninth of November, 1848, were duly notified, in writing, whereby and by force of the statute, &c., an action has accrued to the plaintiffs to recover their reasonable damages, &c.

The second count was, in the same form, to the allegation of notice in writing; and then adds, " but the said company, intending to injure the plaintiffs, &c., did not remove the obstructions, but permitted them to remain from the twenty-ninth of November, hitherto, being more than sixty days after notice; whereby, &c."

The sixth count alleged, that on the tenth of July, 1847, there was a highway in Troy, called Cobb's road, leading, &c., which the town was bound to repair; and that the company built their road across said highway, and were then and there proceeding in the construction of their road, and that the company did, in so constructing their road, cause obstruction and injury to said Cobb's road, by erecting across it an embankment of earth, whereby it was rendered steep, inconvenient and difficult to pass, of all which the said company, on the twenty-ninth of November, 1848, were duly notified, in writing, whereby, and by force of the statute, &c., an action has accrued to the plaintiffs, to recover reasonable damages, &c.

The seventh count alleged notice, and a continuance of the obstruction to the date of the writ, as in the second count.

At the trial, upon the general issue, the defendants contended, that the plaintiffs could not recover any damages, except for money which they had been compelled to pay, and that there should be a special allegation in the writ to that effect; nor any damages, except for expenditures actually incurred, nor without a special allegation. The defendants offered their charter in evidence, and contended, that the plaintiffs had no right to

The Town of Troy *v.* Cheshire Railroad Company.

maintain this action, in cases where a remedy was furnished by the charter ; also, that the plaintiffs could not recover for any acts of the defendants, not necessarily incident to the construction and maintenance of the road; nor for the value of materials, nor for making the road less convenient if not actually insufficient, nor for prospective damages.

The court instructed the jury, that it was the duty of the defendants to leave the highways in such a condition that it would cost the town no more to keep them in repair, or to make them reasonably convenient for the public travel, than it would cost before the defendants built their road ; that the town could not recover damages, for a mere inconvenience, which did not make the road any more expensive to be kept in repair, or did not render it necessary for the town to expend any more money to make it reasonably convenient for the public travel, than was necessary before the railroad was built ; that if the building of the railroad rendered the highway more expensive to be kept in repair, or made it necessary for the town to expend more money, in order to make it reasonably safe and convenient for the public travel, than was necessary before the railroad was built, the town might recover reasonable damages : that where the railroad had so obstructed the highway, that the public travel could not pass, and had been compelled to go round the obstruction, the common travel must have a mode of passing, and it was but reasonable, that the town might recover what it would cost to provide it, if any sum were necessary to be expended for that purpose ; and that the town might recover whatever it would cost, by reason of the action of the railroad, to make the highway reasonably wide, safe and convenient, for the public travel. The court also ruled, that the mere liability to accidents which might happen by reason of the vicinity of the railroad to the highway, was not a cause for which the town could recover damages.

The sixth section of the defendants' charter provides, that if the said railroad shall in the course thereof, intersect any canal, turnpike, or other highway, the said railroad shall be so constructed, as not to impede or obstruct, the safe and convenient use

of such canal, turnpike, or other highway ; and the corporation shall have power to raise or lower such turnpike, highway, or private way, so that the railroad, if necessary, may conveniently pass under, or over, the same ; and if said corporation shall raise or lower any such turnpike, highway or private way, and shall not so raise or lower the same, as to be satisfactory to the proprietors of such turnpike, or to the selectmen of the town, in which said highway or private way may be situated, as the case may be, said proprietors, or selectmen, may require, in writing, of said corporation, such alteration or amendment as they may think necessary ; and if the required alteration or amendment be reasonable and proper, in the written opinion of the road commissioners for the county in which such amendment or alteration is proposed, and the said corporation shall unreasonably neglect to make the same, such proprietors, or selectmen, as the case may be, may proceed to make such alteration or amendment, and may institute, and prosecute to final judgment and execution, any action on the case against said corporation ; and shall therein re- cover reasonable damages, for all charges, disbursements, labor, or services, occasioned by making such alterations or amendments, with costs of suit.

The jury retuned a verdict for the plaintiffs. The defendants excepted to the instructions, and moved that the verdict be set aside ; they also moved in arrest of judgment, because it is not alleged in the declaration, that the town has been compelled to pay any damages, or has paid any money.

*Wheeler* for the defendants.

1 The plaintiffs are not entitled to judgment, because there is no allegation, in the declaration, that they have been compelled to pay any damages, or had incurred any expenditures, in consequence of the alleged wrongful acts of the defendants. The town was not the absolute owner of the highway, or of any of the materials of which it was composed. The public had only an easement in the highway ; and the town had no other or greater rights therein than the public. *State* v. *New-Boston,* 11 N. H. Rep., 407, and the authorities there cited. The title

to the soil remains in the original owner. *Copp* v. *Neal*, 7
N. H. Rep., 275. The statute imposes certain duties upon
towns, in regard to highways; but their pecuniary interest ex-
tends only to the sums paid, to put and keep the highways in
repair, and the damages paid to those sustaining injury, through
the want of repair. From the very nature of the plaintiffs' in-
terest in the highway, the damage, if any, must have been special.
The acts complained of, did not, *necessarily*, cause damage to the
plaintiffs. And when the damages are not the necessary result
of the acts complained of, they must be particularly specified in
the declaration. 2 Greenl. Ev., 209, and the authorities there
cited.

2. The defendants' charter provides a remedy for most of
the alleged wrongs set forth in the declaration; and no action
can be maintained against the defendant, under the act of 1847,
in the cases where a remedy is furnished by the charter. The
rights and liabilities of the defendants were clearly defined in
the charter; and if the town suffered injury, there was a plain
and adequate remedy. It is not to be presumed, that the legis-
lature intended to substitute another remedy. This would in
effect, be a modification or alteration of their charter, which
can only be done after notice, and an opportunity to be heard.
Charter, § 11. And there is no pretence that any such notice,
or opportunity, has been given.

3. The act of 1847, chap. 487, § 1, professes to furnish a
remedy, only in cases of injury done in the construction and
maintenance of the railroad; and the defendant contends, that
this applies only to acts necessarily incident to the construction
and maintenance of the railroad; and at most can include only
a portion of the grievances set forth in the declaration.

4. The plaintiffs can recover nothing for the value of the
materials taken, (as, for example, the materials of the bridge,)
for the reason already stated, viz.: they had no pefect title or
ownership in them. When a stone bridge is once erected, in
the usual way, it is attached to the freehold, as a fixture, and be-
comes the property of the land-owner, subject only to the public
easement.

5. The plaintiffs can recover nothing for prospective damages; and the court erred in instructing the jury, that if the highway was so obstructed that the public travel could not pass, the town might recover what it would cost to make a road around the obstruction. If this ruling is correct, the town might, where the obstruction extended the whole length of the highway, recover the costs of making an entire new road, extending for miles; and that without any power, on the part of the public, to compel the town to expend the money thus received upon a new road.

*Atherton*, with whom was *Vose*, for the plaintiffs.

The statute of 1847 provides, that if a railroad company throw any obstruction upon, or cause any obstruction, or injury to any highway, &c., the party injured, person or corporation, shall have and maintain an action on the case and recover reasonable damages for the injury done. The statute also provides that if the railroad continues any obstruction, injury, or inconvenience already existing, for sixty days after notice given, an action on the case shall be maintained, and reasonable damages recovered for the injury done. The statute does not provide, that the town shall recover merely such expenses as they shall have been obliged to incur at the time of the commencement of the suit. The whole tenor of the law of July 3, 1847, is inconsistent with the position taken by the defendants' counsel, who argues, as if it were a case of slander for words not actionable in themselves, and where, to sustain an action, special damages must be alleged. The statute here, gives the action when the obstruction, inconvenience, or injury, is caused by the act of the railroad; or if the obstruction, inconvenience, or injury, is continued sixty days after notice. The right of action is complete, by statute as to future obstructions, when the railroad does the act affecting the highway; as to existing obstructions, in sixty days after notice; and the damages are to be recovered, for the "*injury done*," by the act of the railroad affecting the highway.

From the nature of the interest of towns in highways, well

settled in the authorities cited by the defendants' counsel; their duty to keep them in repair, &c., the damages must be precisely those which the court instructed the jury to take into consideration. It is the intention of the statute, and for the benefit of towns and railroad corporations, that the whole damages should be found in one action. *Wood* v. *Nashua Manf'g. Co.*, 5 N. H. Rep., 467. The whole damages, resulting from the act of the railroad corporation, in causing the obstruction and injury to the highway, must, necessarily, be left to the jury, under proper instructions of the court. The declaration expressly alleges the liability of the town to keep the road in repair.

2. The sixth section of the charter provides that if said railroad, in the course thereof, intersect or cross, any highway, said railroad shall be so constructed, as not to impede or *obstruct* the safe and convenient use of such highway.

In the first place, this section *does not "provide* a remedy for the wrongs set forth in the declaration." It does not authorize the railroad to obstruct highways and provide a remedy, but it forbids such obstruction.

In the next place, if it did provide a remedy, the law of 1847 was intended to provide a better remedy, more advantageous to all parties. The principle cannot be sanctioned, that new remedies may not be provided, for wrongs done, by railroad corporations, to the persons or property of citizens, or to the property of corporations. Railroads cannot be placed on better ground than individuals.

The act of 1847 is " a general public law." It is thus a law applicable to all railroad corporations, and a law of which corporations, as well as individuals, are bound to take notice. Its purpose is to protect the rights of property.

The sixth section of the charter grants no privileges to the company. It prohibits them from constructing their road, so as to obstruct or impede the safe and convenient use of any highway. Suppose no remedy given by the charter, the legislature would clearly have a right to enact one. One remedy being given, the legislature can add another, more effectual.

The act of 1847, is not in conflict with the sixth section of

the charter, but to carry out its spirit, and is more extensive. The sixth section is a provision in behalf of the public, and the rights of property. General laws, to afford remedies for any infringements of those rights, can be enacted, applying to corporations, as well as individuals.

Railroad corporations take and disturb private property, in this State, by virtue of their being public corporations. The legislature has, from time to time, passed general laws applicable to them; among other things varying the mode of assessing damages for lands taken. It cannot be supposed, that all possible wrongs, or all possible remedies, are provided for in railroad charters. To exempt them from general legislation, for the security of citizens, and other corporations, in instances like this, would be inexpressibly dangerous to the public weal.

If a remedy, provided in a railroad charter for an invasion of the rights of property, is deemed ineffectual by the legislature, to say that legislation can give no other remedy, is to render nugatory the provision in the fifth article of amendments to the constitution of the United States, which provides that private property shall not be taken for public use without just compensation.

3. It would seem to be a singular defence, for the defendants to set up, that they had done more injury, than was absolutely necessary for the construction and maintenance of their road, and therefore they were not liable. They cannot allege their own wrong.

4. It is not admitted, that if a town prepare or purchase stone for a bridge, they have not a property in such materials. But if this were so, to the full extent claimed by the defendants' fourth objection, there is nothing in the charge of the court, nor in the declaration; inconsistent with it. The conversion of materials was stated as a ground of damage, only as causing obstruction and injury to the highway, both in the declaration and by the court, and not on account of the value of the stone *per se*.

5. The statute answers the fifth objection, which is in effect, only the first objection, in other words. The recovery is to be for the " injury done ;" not a part of it, but the whole.

If the statute were not as explicit in its terms, as it is, as to the first and fifth objections, the following references might be in point.

Wherever a wrong is done to a right, the law imposes damage, and if no substantial injury be found to be thereby occasioned, nominal damages will be given in support of the right. *Whipple* v. *Cumberland Manf'g Co.*, 2 Story's Rep., 651. Prospective damages may be recovered, where the cause accrues before the commencement of the action. *Stille* v. *Judkins*, 3 Greenl. Rep., 302. Where a contractor, for keeping a public bridge in repair, commits a breach of his contract, and the county court has caused the necessary repairs to be made, the rule of damages, in the action for the breach, is, the value of the repairs needed, and not the sum the county may have spent for them. *State* v. *Ingraham*, 5 Iredell, 441.

The necessity of alleging special damages is not, in any degree, rendered more apparent, or apparent at all, because the plaintiffs are not absolute owners of that property. The nature of the interest of the plaintiffs is stated in the declaration. The interest and liability of a town, in relation to highways, are well settled.

*Wheeler*, in reply.

The ruling of the court proceeds upon the ground, that the rights and liabilities of the parties are to be ascertained by the act of July 3, 1847, solely; and the plaintiffs assume, that that act overrides the provisions in the charter. To this the defendants do not assent. They admit, that the provisions of the two appear to be in conflict; that by one, it is provided that they shall be liable absolutely, or after sixty days' notice, for certain acts, while by the other, the liability can arise only after the action of the selectmen and road commissioners. And so in other particulars. Now, it is to be observed, that the act of 1847, is a general public law, and does not profess to alter, amend or repeal, in any way, the defendants' charter, which is a private act. And we contend, that it does not take from the defendants, the right to do that which their charter authorizes them to do, or impose penalties for acts authorized by the charter.

The charter defines the rights and liabilities of the parties, in case of the obstruction of a highway, in the building of a railroad; but it is clear, that this action cannot be maintained upon any of the provisions therein, and the plaintiffs do not attempt this.

The defendants have not claimed that they did *more* injury than was necessary, in the construction of their road; but if the plaintiffs intend to charge them, in their declaration, with such acts, (as some of the language might imply,) they reply, that such wrongful acts are not within the provisions of the law of July 3, 1847; and that if the plaintiffs intend only to rely upon such acts as were incident to the proper construction of the road, these were authorized, and the damages provided for, by the charter.

If the plaintiffs were the absolute owners of the property alleged to be injured, the reasons why the damages should be specially alleged, would be less apparent; but when the interest of the plaintiff is of a qualified nature, and the general ownership of the property is in another, there are obvious reasons why something more should be set out in the declaration, than that a road had been rendered " steep, inconvenient and difficult to pass, &c." In this case, there is no pretence, that the plaintiffs have ever, in fact, been compelled to pay any thing, on account of the alleged injuries or obstructions; or that the highway has not been left, by the defendants, in such condition as to free the town from liability to an indictment, for want of repair in the road.

BELL, J. In general, towns are not the owners of highways, though there unquestionably may be cases where the towns, instead of a mere easement, have thought it judicious to purchase the fee of the land itself. We are not aware of any rule of law, or considerations of expediency, which forbid this to be done, while there are many cases, in which it may be very sound policy for towns to make such purchases, where the land can be obtained. *Copp* v. *Neal,* 7 N. H. Rep., 275. By the modes of laying out highways, prescribed by the law, by dedication made by individuals, and by prescription, the public acquire an ease-

ment merely ; a right to use the road for the purpose of passing and re-passing. Bro. Ab., 140, b., (2 E. IV., 9 ; 8 E. IV., 9 ; 8 Hen. VII., 5 ;) *Makepeace* v. *Worden*, 1 N. H. Rep., 16 ; *Cortelyou* v. *Van Brunt*, 2 Johns. Rep., 363 ; *Chatham* v. *Brainard*, 11 Conn. Rep., 60 ; and a right to use the stones, gravel, and other materials, composing the land, for the repairs of the road, in a reasonable manner, *State* v. *New-Boston*, 11 N. H. Rep., 407, and cases there cited. The title to the soil remains in the owner, *Makepeace* v. *Worden*, &c., above cited ; and he retains, generally, the right to make any use of his land, and to excercise any rights over it ; and to derive any income, or profits from it, which he can do without interfering with the public use. *Avery* v. *Maxwell*, 4 N. H. Rep., 37 ; *Mills* v. *Stark*, 4, N. H. Rep., 512 ; *Perley* v. *Chandler*, 6 Mass. Rep., 454 ; *Stackpole* v. *Healey*, 16 Mass. Rep., 33 ; *Jackson* v. *Hathaway*, 15 Johns. Rep., 447 ; *Barclay* v. *Howell*, 6 Pet. Rep., 498 ; *Davaston* v. *Payne*, 2 H. B., 527. Presumptively, this is the state of the public interest, and the condition of the private rights, to all land occupied for public highways ; and any length of occupation of land, for a public way merely, raises no presumption of title to the soil ; *Copp* v. *Neal*, 7 N. H. Rep., 275 ; *Green* v. *Chelsea*, 24 Pick. Rep., 79 ; *Chatham* v. *Brainard*, 11 Conn. Rep., 60 ; and its occupation, for other uses, as for watering places, for public landings, for water pipes, and other like purposes, only tends to shew the fact of a similar easement, and not of ownership of the land.

Towns in which roads are laid out, for certain purposes represent the public, but they are not the public. The whole community, in whatever towns they may abide, have an equal interest and title to all the privileges and advantages of the public ways, and have equal right to complain of any infringement. *The State* v. *Hampton*, 2 N. H. Rep., 25 ; *Ivison* v. *Moore*, 1 Ld. Raym., 486. The town itself and its inhabitants, have no greater interest, either severally or jointly, in the easement or right of passing upon the highways, than the residents of any other town, or the traveller who comes from another State. And where the town owns the soil itself, its rights, as such, to the

land are simply those of other land owners.   The right of the public, to pass and re-pass, draws after it the right to require the road to be kept in repair by those upon whom the law has placed that burden, and the right to require the removal of all obstructions to its use.   Any neglect, of those who ought to repair, to the common injury, and interruption to the common right of passing, is a public wrong, and to be punished as such, upon indictment by the grand jury, or information by the public prosecutor ; *The State* v. *Dover,* 9 N. H. Rep., 468 ; *The State* v. *Dover,* 10 N. H. Rep., 394; but neither of these is the foundation of any private action, or claim for damages, unless it is the cause of special injury, or damage to the claimant, not common to himself and others.   But wherever the neglect of the duty to repair, or any obstruction to the right of passing, improperly caused by any person, is the cause of any special injury to any individual, or to any corporation, the law gives to the party so injured, an action for the redress of the wrong done to him. *Farnum* v. *Concord,* 2 N. H. Rep., 392 ; *Pierce* v. *Dart,* 7 Cow., 609, and cases there cited ; *Stetson* v. *Faxon,* 19 Pick. Rep., 147, and cases there cited ; *Ivison* v. *Moore,* 1 Ld. Raym., 486 ; 4 Black. Comm., 167.   On this principle, actions are constantly maintained against towns, and turnpike and bridge companies, for injuries sustained by travellers, their animals, carriages and loading, from the want of suitable repairs of their roads, and bridges ; and against individuals, for like damages, sustained by reason of pits, improperly dug in the highways, or by leaving in them, stones, or lumber, or carriages, or by other obstructions improperly left in the highway.   Towns may be the owners of property used upon highways, as animals and carriages, or property carried upon them, and as such, they have the same rights, and the same remedies for such injuries, against other towns, corporations or persons, as other persons or corporations would have in a like case.   Besides these rights and remedies, towns have other rights and remedies, peculiar to them, growing out of the duty to make and keep in repair a suitable path for the public travel.   By our law, the duty of making and repairing highways is imposed upon towns.

They are authorized to raise necessary taxes for this purpose, and to appoint necessary officers to superintend the performance of this duty; and are subjected to fines, and liability for damages for neglect. Besides the right to use, for the purpose of such improvements and repairs, the materials, which the road itself affords, the proper officers are authorized to procure, at the expense of the town, such lumber and materials as are necessary for the repairs required to be made. Rev. Stat., tit. IX. And, as bridges are deemed to constitute a part of the public highways, except in those cases where they have been erected by private corporations, and as many highways, for great distances, furnish but a small amount of the materials, the expense incurred by many towns, on this account, is of no inconsiderable amount. Being thus required, by law, to use the necessary materials, to build roads and bridges, either furnished by the land or at their own expense, and being bound to support such roads and bridges, the law necessarily gives them a qualified property and interest, in the path, or bridge, they have constructed. *The State* v. *Hampton*, 2 N. H. Rep., 25; *Harrison* v. *Parker*, 6 East., 154. This is an interest, entirely distinct from the right of way, of passing and re-passing, and of making and repairing the road, acquired by the public. The right of the land-owner is not only subject to the public easement, but it is necessarily subject to the rights acquired by the town, in the roadway and bridge, constructed by their labor, and at their expense, from materials furnished by themselves, directly, or indirectly paid for by them, in the damages awarded against them, upon the laying out of the way. The ordinary rule is, that where materials or structures, are added or annexed to land, whether by the owner, or others, they become, by such annexation, a part of the land and the property of the owner of the land. 2 Kent's Comm., 362; *Kittridge* v. *Woods*, 3 N. H. Rep., 505; *The State* v. *Elliot*, 11 N. H. Rep., 542. But, in this case, as in many others, where the person, who makes the annexation, has acquired the right so to annex them, for his own purposes, they become annexed to the land and the property of the land-owner, only *sub modo*, and in a very qualified degree,

and subject to the qualified interest and right of the person, who put them there. Thus the person, who should acquire the right by purchase, or by prescription to support his building by timbers resting upon another's wall, or to carry water to his house, in pipes carried through another's soil, would not, by so placing such timbers, or laying such pipes, attach them to the land, so as to lose his right to them, or to give to the land-owner any right to them, except such as could be exercised without interference with the uses of the party who placed them there. 2 Kent's Comm. 437. And if the owner of the land, and, still more clearly, if a stranger, should destroy them, or injure them, or so interfere, either with them or with the land where they are placed, as to destroy or impair their usefulness, he would thereby make himself liable for any damages the party placing them there might sustain ; and among those damages would be the loss of the qualified property he still retained in them, which, it would be at once seen, would be, from the nature of the several interests in them, nearly, if not quite, the entire value. When a new highway is laid out in a town, and the burden of making and maintaining it is imposed upon them, the town acquires, by necessary inference from the provisions of the law on the subject, the right to enter upon the property condemned, and to do there, in spite of the owner, all such acts as are necessary and proper to be done towards making the roadway, culverts, and bridges, and to use and permanently appropriate to their own use, for the single purpose of constructing and repairing their road, all materials embraced in the appraisal of the land ; and to use, and annex to the land, all such materials as they find it necessary to procure for the purpose of constructing causeways, culverts, or bridges ; and to remove, either to other parts of the roadway, or other suitable places of the highway, all such earth, stone, or other materials, as they find it necessary to excavate, in order to give, or preserve, a suitable grade, or path for public travel. These structures and excavations, as they are bound to maintain and preserve, for the public safety and convenience, they of course acquire or retain, an interest and ownership in, as being an in-

dispensable requisite to the performance of their duty, upon the general principle, that when the law gives to any one a right, or imposes on any one a duty, it implicitly gives every thing, which is necessary to the enjoyment and exercise of that right, or without which that duty cannot be performed. The roadways, culverts, bridges, and all other structures, erected by a town as part of a highway, are the qualified property of the town, upon the principle, before suggested, that they are annexed in pursuance of a right, for the purposes of the town.

The interest of the town is qualified, because, being annexed to the freehold of another, he has the general and ultimate ownership, subject to the right of the town, as owners of the only really valuable interest, and to the easement of the public. *Harrison* v. *Parker*, 6 East., 154; 2 Smith, 262. The position of the town is closely analagous, nay, almost identical, as to this property and interest, to that of the proprietors of turnpikes and toll-bridges, in similar cases. These are constituted, by charters, corporations, with power to erect a turnpike, or a bridge, with suitable approaches, and to take suitable tolls from all persons passing over them. In case there should be occasion, they are authorized to apply to a suitable tribunal, to lay out a way across the lands of individuals, or across a river, and to assess the damages; upon payment of those damages, they are authorized to enter upon the land, and build their road and bridge, and made liable for their support. Notwithstanding the condemnation of the land for the road, the former owner remains the general owner, as before; but it is now subjected, first to the easement of the public, the right of travelling upon the turnpike, or across the bridge upon the payment of tolls, (*Commonwealth* v. *Wilkeson*, 16 Pick. Rep., 175; *Harrison* v. *Parker*, before cited;) and, second, to the right and easement of the turnpike, or bridge company, to enter upon the land, and to do there all necessary acts, required for building, and afterwards maintaining, their road; and among these to annex such stone, lumber and other materials, to the land, as are necessary for these purposes. *Robbins* v. *Boxman*, 1 Pick. Rep., 122; *Adams* v. *Emerson*, 6 Pick. Rep., 57; *Tucker* v. *Tower*, 9 Pick.

Rep., 109; *The State* v. *Hampton*, 2 N. H. Rep., 25; *The State* v. *New-Boston*, 11 N. H. Rep., 410. These articles, thus annexed, may be theoretically, the property of the land-owner, because of their annexation to the land, of which he still remains the general owner. Practically, they are the property of the turnpike, or bridge company, though of course subject to the public easement, because they are the only persons who can exercise any rights of ownership, or reap any of the benefits or profits of ownership.

Nobody can doubt, that for any injury done to a turnpike, or toll-bridge, whether by wrongful act, as by ploughing up the road, or burning, or tearing down the superstructure of the bridge, or demolishing the piers, or by negligent conduct, as by suffering logs to jam against a bridge and sweep it away, the turnpike or bridge company, may maintain their action, and recover such damages as they have sustained.

Probably, for many purposes, it may be found, that the rights of railroad corporations must be similar to, those of turnpike and bridge companies.

We think it clear, that there is no substantial difference between the rights of such corporations, to the roads and bridges they have built, and those of a town. If the bridge, erected by the town, and which they are bound to maintain, and which they have the right to keep there, so long as it answers the purposes of the public, is destroyed, either wantonly or negligently, by others, the town may, upon what we think are unquestionable principles of common law and common justice, commence their suit against the wrong-doer, and recover all such damages as they have sustained by his wrongful act, among which would be included the actual value of the materials of the bridge, as they then stood. And if the wrong was of a character, which rendered it more difficult afterwards to erect or support a bridge there, as if the banks were washed away, so as to increase its length, or the bed of the river excavated, so as to render it more costly to construct new foundations, or to compel the town to seek a new location, the town should recover such sum as would fairly indemnify them for the loss, they thus sustain.

These principles are of course equally applicable to any injury done to a highway, as to a bridge.

Having thus stated, what we conceive to be the state of the law, independent of statute provisions, we turn to the statutes, which are supposed to have a bearing upon this case; and first the charter of the defendant corporation; the sixth section of which makes part of the case.

The first clause of this section, as is well remarked by the plaintiff's counsel, merely forbids the building of the railroad in such a manner as may impede or obstruct the use of any highway it may intersect or cross. In that respect, it is simply a confirmation of the clear principles of the common law. The other clauses, merely relate to the case where the railroad company may raise or lower a highway, so that the railroad may pass under or over it. There is nothing in the case, which shews that any part of this section has any bearing upon this case. It does not appear that here is any intersection, or crossing of the highway by the railroad, or any raising or lowering of it, to bring it within either of the clauses of this section, unless it be of Cobb's road, described in the sixth and seventh counts. As to these, the sixth and seventh counts, the case is not brought within the terms of the statute, and the same remark is true as to all the grievances, if the cases are really such, that they are properly governed by this statute.

In any case clearly within the provisions of this section, the party injured would be confined to his remedy under the statute. *Woods* v. *Nashua Manf'g Co.*, 4 N. H. Rep., 527; *Lebanon* v. *Olcott*, 1 N. H. Rep., 339; *Stevens* v. *Mid. Canal*, 12 Mass. Rep., 466; *Spring* v. *Russell*, 7 Geenl. Rep., 273; *Calking* v. *Baldwin*, 4 Wend. Rep., 667; *Aldrich* v. *Cheshire Railroad*, 1 Foster's Rep., 359. But it is apparent that this charter is limited, in this section, to a single object. If the crossing is not made satisfactory, the selectmen may obtain the opinion of the road commissioners, and if the railroad company do not alter the crossing conformably to that opinion, they may make the alteration themselves, and recover the expense by suit.

That is clearly not the case. For any other case, or for any

other grievance this section makes no provision, and they remained as at common law.

The statute of July 3, 1847, chap. 486, was apparently designed to provide a remedy, in cases of this kind. It provides that, "if any railroad corporation, in constructing and maintaining their railroad, shall, in altering any 'highway, or bridge, for the purpose of constructing their railroad over, under, or near such highway, or bridge, or for any other purpose, cause any inconvenience, or injury to the lands, buildings, or rights, of any person, or persons, or of any corporation, public or private, or shall continue any such inconvenience or injury, already existing, for the space of sixty days, after notice of the same, in writing, is given to some officer of such railroad corporation; or if any railroad corporation shall, in constructing or maintaining their railroad, throw any obstruction upon, or cause any obstruction, or injury to any highway, bridge, turnpike, or private way; or permit any such obstruction or injury, already existing, to continue for the space of sixty days, after notice of the same has been given as aforesaid, in any such case, the person or persons, or corporation, shall have, and maintain, an action on the case, and recover reasonable damages for the injury done."

There is a proviso which allows the railway company to procure a new road as a substitute.

The only change, introduced in the common law, by this statute, is that contained in the proviso, which allows the company to procure another road, and the clause which gives the right of action after the expiration of sixty days, after notice is given. There is no question here, as to any substitute road, nor in relation to the sixty days' notice which is alleged in all the counts; and the case stands, therefore, substantially as at common law.

We have carefully examined the instructions of the court relative to the rule of damages; and they seem to us, to express the rule with precision and correctness.

The court was desired to instruct the jury, that the plaintiffs could not recover for any damages, not specially alleged in their writ; nor for anything but expenditures actually incurred, and which they had been compelled to pay; nor for the value of ma-

terials; nor for prospective damages; nor for making the road less convenient, if not actually insufficient. We have already expressed our views, as to the right of the town to recover for materials. And the charge of the court as to the point of the inconvenience of the road, was in accordance with the request of the defendant's counsel. The question, as to the right to recover prospective damages, and to recover any damages, except for money actually expended, is deemed important by the defendant.

It is evident, that a recovery in this action, is a bar to any future action for *this* cause. In cases of nuisance, the injury may be of two kinds: first the direct injury caused by the act complained of, and second, the injury which may be afterwards occasioned by the unauthorized continuance of that cause. The declaration, in this case, alleges injury from the first construction of the railroad, and from its continuance to the date of the writ. The plaintiff can, in no event, recover for any cause of action, not included in his writ; and, on this ground, he can recover for no damage not sustained, when his action is commenced. For any future damage, he may recover in an action based upon the continuance of the injurious cause; and in such action, it would be no answer to say, that the damage now claimed has been recovered in a former suit, because the writ in that case, warrants a recovery, only for damages sustained previous to its date. The principle, for which the defendants contend, is sound, and the only question which can arise here, is as to the application of that principle. The damage done at the date of the writ, is to be compensated, and that only. If that damage consists in the exposing of the party, to expenditures of money, the test is not the time when those expenditures are made, for they may be paid at once, or their payment delayed, without, in any way, affecting the rights of the parties. The question is not, when was the money paid, whether before or after suit, but was the liability to those expenditures occasioned by the acts complained of, in the writ, or was it by the continuance of the same acts, or of the state of things produced by those acts, after the action was brought? If they are the result, and consequence

of the wrongful acts complained of, they are to be recovered in that action. If they result, not from the wrongful acts, but from the wrongful continuance of the state of facts produced by those acts, they form the basis of a new action.

There may, of course, be cases where it may be difficult to draw the line, but, it is apprehended, they will not be numerous. Wherever the nuisance is of such a character, that its continuance is necessarily an injury, and where it is of a permanent character, that will continue without change from any cause but human labor, there, the damage is an original damage, and may be at once fully compensated, since the injured person has no means to compel the individual doing the wrong, to apply the labor necessary to remove the cause of injury, and can only cause it to be done, if at all, by the expenditure of his own means.

But where the continuance of such act is not necessarily injurious, and where it is necessarily of a permanent character, but may, or may not be, injurious, or may, or may not be, continued, there the injury, to be compensated in a suit, is only the damage that has happened. Thus the individual, who so manages the water he uses for his mills, as to wash away the soil of his neighbor, is liable at once for all the injury occasioned by its removal, because it is, in its nature, a permanent injury ; but if his works are so constructed, that upon the recurrence of a similar freshet, the water will probably wash away more of the land, for this, there can be no recovery, until the damage has actually arisen, because it is yet contingent, whether any such damage will ever arise. A person erects a dam upon his own land, which throws back the water upon his neighbor's land ; he will be answerable for all damage which he has caused before the date of the writ, and ordinarily for no more, because it is, as yet, contingent and uncertain, whether any further damage will be occasioned or not; because such a dam is not, of its own nature, and necessarily, injurious to the lands above, since that depends more upon the manner, in which the dam is used, than upon its form. But if such a dam, is in its nature of a permanent character, and from its nature must continue permanently to affect

the value of the land flowed, then the entire injury is at once occasioned by the wrongful act, and may be at once recovered in damages.    In one of the cases, which arose from the building of the great canals of New-York, the case was that a high dam was erected, upon the falls of the Hudson, for the purpose of diverting the waters of the river into a feeder for the canal; the lands of an owner above, were buried twenty feet under water, and their value to him, of course, entirely destroyed; the work was in its nature and design permanent.    There, it would be clear, that the party injured would be entitled to recover the entire damages he had sustained, and must sustain in a single action, in truth, substantially the entire value of his property.    And the decision of this court, in the case cited by the plaintiff's counsel, *Woods* v. *Nashua Manf'g Co.*, 5 N. H. Rep., 467, is in entire accordance with this view.    In such a case, it might be suggested, that the actual loss he had sustained was only of the use of his property, to the date of the writ, and that he, and those who came after him, might bring their actions, from year to year, for any injuries they might afterwards sustain; but in such a case we entertain no doubt, that, consistently with the rules of law, the plaintiff might recover the entire property lost.

To apply this principle to the case before us; the town is made, by law, chargeable with the duty, and expense of maintaining the road, which this railroad company have in part destroyed, and in part obstructed, according to the declaration; they have a qualified interest in the roadway and bridge, which they have constructed, and have the right to maintain, and in the materials, of which they are composed, and are entitled to recover the value of that roadway and material.    The railroad is, in its nature and design, and use, a permanent structure, which cannot be assumed to be liable to change; the appropriation of the roadway and materials to the use of the railroad, is therefore a permanent appropriation; the use of the land set apart to be used as a highway, by the railroad company for the use of their track, is a permanent diversion of that property, to that new use, and a permanent dispossession of the town of it, as the place on which to maintain the highway.    The injury done to the town is then

a permanent injury, at once done by the construction of the railroad, which is dependent upon no contingency, of which the law can take notice, and for the injury thus done to them, they are entitled to recover at once their reasonable damages. Those damages are, first, the value to them, of the property and rights, of which they have been deprived, for the use and purpose, to which they are by law, bound to apply them. Assuming, then, that they were sufficient to meet the requirements of the law, and the public wants for a highway, their value is to be measured by the cost of the new ground, they are bound to furnish to the community for a way, if it will be less costly, and more reasonable, having reference to the accommodation of the public by the highway, and the railway to procure new ground, rath-than to build the highway over or under the railway; by the costs of the materials, which will be requisite to make a road, which will as well meet the requirements of the legal duty of the town to the public in relation to the road, as the old, and the expense of applying those materials to that use, in the new road, and the fund that will be permanently required in all future time, to defray the increased expense of supporting and maintaining the new road in suitable repair, beyond what would have been necessary for the old road. These ingredients go to make up the present value of the old road, of which the town has been deprived, and they are to be recovered, not as prospective damages, but as a compensation for the injury the town has now sustained. When these expenses shall be paid by the town, or whether they shall ever be paid, is a question, with which these defendants have nothing to do. If, from change of circumstances the town should be relieved from the burden of maintaining the road, the amount paid by the railroad will be applied, as in equity it should, to replace to the town the costs of the land for the road, and the expenses of making it, long since paid by them.

These views are, but in different terms, the rule of damage laid down by the learned judge who tried this cause; and with which, upon careful examination, we are entirely satisfied.

There remains, then, the question, arising upon the motion in

The Town of Troy *v.* Cheshire Railroad Company.

arrest of judgment, for a supposed defect of the declaration, that it is not alleged, that the town had been compelled to pay any damages, or had expended any money. The distinction taken in 2 Greenl. Ev., 209, § 254, to which we are referred by the defendants, is thus stated: "All damages must be the result of the injury complained of. Those which necessarily result, are termed *general damages*, being shown under the *ad damnum*, or general allegation of damages at the end of the declaration. But where the damages, though the natural consequences of the act complained of, are not the necessary result of it, they are termed special damages, which the law does not imply, and therefore, must be specified in the declaration, or the plaintiff will not be permitted to give evidence of them at the trial."

This note is found in Chitty's Pleading, 386, and is sound beyond question. Does it apply here? That depends upon the view taken of the damages to be recovered. If the amount, which the town has paid, or may be compelled to pay, is to be allowed as special damages, naturally perhaps, but not necessarily resulting from the defendants wrongful act, then the motion in arrest may prevail, if no other damages, but those of this description exist; but if some damages necessarily result, in judgment of law, to the town from the obstruction of the highway, as an injury done to their rights, then the plaintiff may well recover something for those damages, however small, and the declaration is well enough. Upon this point, we have already expressed our views, and as we do not adopt the opinion of the defendant, that the town have no interest or right, in the highways or bridges they build and support, but have merely a duty to perform in regard to them; this motion, in our judgment, is not well founded.

*Judgment on the verdict.*