Argued February 3, reversed March 18, 1953

# LINCOLN COUNTY *v*. BRUESCH

254 P. 2d 690

*Frank S. Sever,* of Portland, argued the cause for appellant. With him on the briefs were Louis G. English, District Attorney, of Toledo, and William G. Hollen, of Newport.

*Mark V. Weatherford* argued the cause for respondent. On the brief were Weatherford & Thompson, of Albany.

Before Latourette, Chief Justice, and Warner, Rossman, Lusk and Perry, Justices.

WARNER, J.

This is a suit by Lincoln county, a political subdivision of this state, to enjoin the defendant Joe Bruesch from trespassing upon the right of way of county road No. 520 and to require the defendant to remove all of his property and equipment therefrom. From a decree dismissing the complaint, the plaintiff county brings this appeal.

The county road in question is known as the Southside Yaquina road from Butler's to Theil creek. The

portion lying in sections 35 and 36 of Township 11 South, Range 11 West of the Willamette Meridian has never been completely constructed. Although graded, that part in which we are interested had been closed to traffic by order of the county court.

The defendant's operations consisted of logging timber on properties owned by the Guy Roberts Lumber Company and from lands lying to the south of the county road. He would thereafter convey the logs up to the road on approach roads hereinafter referred to, thence directly across or along the county road to places on the north side thereof where he would dump them into Yaquina bay or Yaquina river for later transport by water to a lumber mill.

The circumstances alleged by plaintiff as warrant for the relief sought are set forth in Paragraph III of its complaint, reading as follows:

"That the defendant, Joe Bruesch, is engaged in logging operations on the property adjacent to said road, and is and has been for some time past, dragging logs across such roadway, digging up the surface of the same, burying logs or skids in the surface of the fill of such roadway, and stopping and interfering with the arrangements for drainage of said roadbed, operating machinery thereon and cutting away the slopes of the cuts of said roadway and by reason of all of such acts, inflicting damage thereto by reason whereof the plaintiff, Lincoln County, will be put to great expense in repairing said damage, regarding [regrading] said road[,] reopening the drainage and cutting new slopes for the bank of said cuts, the amount of which cost and expense cannot, as of this date of filing of complaint, be accurately determined."

The defendant answers by a general denial, admitting, however, that the county is undertaking to

construct a road in the area alleged and that he is conducting a logging operation nearby.

The legal problems involved are few and relatively simple. The solution of the questions presented turns largely upon questions of fact.

The plaintiff stresses the importance of a permit issued to defendant and alleged to authorize the building of a temporary road crossing on the right of way which is the subject of this suit. This permit, as shown by the printed recitals on the face thereof, was given pursuant to the provisions of ch 308, Oregon Laws 1949, as amended by ch 186, Oregon Laws 1951. The pertinent sections, as amended, read:

"[Section 2, ch 186, Oregon Laws 1951] The State Highway Commission with respect to state highways and sections of state highways which are not access-controlled highways and the county court of each county in the state with respect to county roads may adopt reasonable rules and regulations and issue permits, not inconsistent with the law for the construction of any approach road, facility, thing or appurtenance upon such rights of way, provided that the powers herein granted shall not be so exercised as to deny any property adjoining such road or highway reasonable access thereto. Such rules and regulations and such permits may include, but need not be limited to, provisions for construction of culverts under approaches, requirements as to the depth of fills over culverts, and requirements for drainage facilities as may be deemed necessary, and any such permit issued may contain such terms and conditions as in the judgment of the granting authority may be in the best interests of the public. Nothing in this Act shall be deemed or construed to grant any right for or authorize the construction of an approach road or any other facility, thing or appurtenance on the

right of way of any highway or section of highway constructed as a throughway or other access-controlled highway. All construction under such permits shall be under the supervision of the granting authority and at the expense of the applicant. After completion of the construction of the particular approach road, facility, thing or appurtenance, the same shall be maintained at the expense of the applicant and in accordance with such rules and regulations.''

''[Section 3, ch 308, Oregon Laws 1949] Upon failure of the applicant to construct or maintain the particular approach road, facility, thing or appurtenance, in accordance with the conditions of the permit and in accordance with the rules and regulations, the highway commission or the county court, as the case may be, may, after the expiration of 30 days following the transmittal of a written notice to the applicant, remove all such installations upon the right of way at the expense of the applicant, which expense may be recovered from the applicant by the state or county, as the case may be, in any court of competent jurisdiction.''

The plaintiff deems the permit and its provisions pertinent to the relief sought by its complaint, claiming that ''The primary question in this case is whether or not the County Court * * * after once having issued a permit for an approach road * * * has authority to cancel such permit for violation of the conditions contained in the permit.'' We cannot accede to this proposition, for reasons that will soon become apparent.

The permit which the plaintiff county issued to defendant on July 17, 1951, is a document entitled ''Encroachment Permit''. It is a printed form wherein insertions in various blanks are made in handwriting or by typewriting (hereinafter indicated by our italici-

zation). The permissive or authoritative portion, as found on the front side, reads:

"Subject to all terms, conditions and provisions written or printed below, or any part of this form,

"PERMISSION IS HEREBY GRANTED TO
*J. H. Bruesch*
Name

*Road No. 520*
Street or Road
to

"*The bond referred to in this permit is a cash bond and may be used to repair any damage to County Roads caused by the grantee*

"No work shall be done under this permit until the party or parties to whom it is granted shall have communicated with and received instructions from *The Lincoln County Court*

"This permit shall be void unless the work herein contemplated shall have been completed before *July 1, 1953,* 19—

"Dated at *Toledo, Oregon* this *17th* day of *July, 1951*

|  | /s/ Tom F. Skelton |
|---|---|
| COUNTY ENGINEER | JUDGE |

/s/ Ray Cox
COUNTY COMMISSIONER

/s/ L. T. Grant
COUNTY COMMISSIONER"

■ The foregoing is immediately followed on page one by a printed statement of §§ 1, 2, 3 and 4 of ch 308, Oregon Laws 1949. On the reverse side and under the title "GENERAL PROVISIONS APPLICABLE TO ALL PERMITS" are the printed rules and regulations governing the permittee's erection, use and maintenance of whatever may be said to have been authorized on the front side of the permit as herein-

above set forth. Included in these general provisions is one requiring a bond in the amount of $200 for the protection of Lincoln county "as set forth in the terms of the bond" and a covenant that any damage or injury done by the permittee shall be at his sole expense. Defendant's acceptance of the general provisions of the permit is indicated by his endorsement on the reverse side.

The evidence indicates that the defendent treated the permit as authority to build any number of desired crossings over the county road to better enable him to convey his logs from the south side thereof to points on the north side for deposit in the waters of Yaquina river or Yaquina bay, whichever was nearer to the north side of such crossing; and acting pursuant to his own construction in this respect, he effected separate crossings at three different points within a strip of roadway approximately 4,000 feet in length which fronted the situs of his timber-cutting operations on the south side of the road. The county engineer, to the contrary, seemed to view the permit as authorizing only one road crossing for defendant's operations. The county engineer's construction also seems to have been shared by some of the members of the county court, although one of them in testifying refers to the permit as an "access road permit", implying a right to build an approach road. The testimony of the defendant and witnesses for plaintiff is largely in terms of rights of the defendant and his obligations accruing according to these different concepts of what operations were, in fact, permitted under the terms of the so-called "Encroachment Permit".

A critical examination of the language of this document indicates no reference whatsoever to a road

crossing nor, indeed, to an approach road. The carelessness of the scrivener in preparing this permit completely destroys its value as an authorization for defendant to do anything. The third blank space, preceded by the printed word ''to'', was unquestionably reserved for a statement describing what the permittee was authorized to do, that is, in terms of the statute, ''to build or construct on the right of way of any state highway or county road, any approach road or any other facility, thing or appurtenance'' (ch 308, § 1, Oregon Laws 1949) and, no doubt, more specifically to state at that point how many approach roads, if any, were intended to be authorized and possibly the approximate location thereof with reference to the county road which they were designed to serve, and, if the authorization was one to construct on the right of way ''any other facility, thing or appurtenance'', to include there an appropriate description of the facility or thing so authorized. The permit as drawn is utterly devoid of any language remotely indicating anything from whence an inference might be drawn as to what was intended to be authorized under the permit as issued.

■ It cannot be successfully argued that the condition in which we find the permit gives rise to an ambiguity which can be clarified by recourse to parol evidence. Ambiguities which result from blanks and omissions are patent. *Haughton v. Sartor,* 71 Miss 357, 15 So 71; *Eaton v. Wilcox,* 42 Hun 61, 65, 3 NYS 501; 3 CJS 1036. It is settled law in this jurisdiction that when the ambiguity is patent, parol evidence is not admissible to explain it or introduce into the document omitted words or phrases. *Hertel v. Woodard,* 183 Or 99, 102, 191 P2d 400; *Tallmadge v. Hooper,*

37 Or 503, 513, 61 P 349, 1127; *Harrisburg Lumber Co. v. Washburn,* 29 Or 150, 166, 44 P 390; *Noyes v. Stauff,* 5 Or 455, 458.

█ In its executed form the instant permit is authority for nothing and void for uncertainty. It is of no value in this suit as the basis for any claim that either party may assert thereunder.

What we have hereinbefore said concerning the "Encroachment Permit" does not, however, dispose of the question of whether or not plaintiff is entitled to injunctive relief against defendant's alleged misuse of county road No. 520.

It is evident that if the allegations found in Paragraph III of plaintiff's complaint are true in whole or in part, then the defendant has been using the highway much in the manner of a private way for the conduct of his own business and with an indifferent regard to the rights of the public therein or the county road's deterioration through his active misuse of the same.

█ The right of one to employ a public highway for travel and the transportation of his property in the ordinary and usual method of highway use common to all members of the public does not comprehend nor countenance a use partaking of the nature of an exclusive prior use with legal immunity from interference by proper authority or from claims of damage arising from his misuse or abuse of public rights of way, unless he can justify such use under some form of franchise or other legal permit. 25 Am Jur, Highways, 635, § 341; 40 CJS, Highways, 244 et seq., § 233.

█ There is no question in our minds that some damage was done to the road by the county's own opera-

tions, but our examination of the record convinces us that the defendant was guilty of many acts of highway misuse resulting in damage, clearly distinguishable from the acts of the county and directly attributable to him. Many pictures were introduced in evidence. These, together with the accompanying testimony in designation and explanation, give cogent support to this conclusion. A detailed itemization of defendant's overt actions will add nothing to this opinion. In general, defendant's damage to the county road resulted from dragging logs lengthwise along the highway to points on the water or north side where they were dumped for ultimate transport to the lumber mill and from laying logs deep in the roadbed and in a manner to accelerate the transport of the logged timber from one side of the road to the other. These acts caused, among other things, interference with the road drainage and resulted in lowering the grade level at several points. Further damage was done by the operation of defendant's Caterpillar. All this was accomplished at different places but within the 4,000-foot area previously referred to and, as shown by the testimony, to plaintiff's damage in the amount of $662.

The decree dismissing plaintiff's complaint is reversed with directions to enter a judgment in favor of plaintiff and against defendant for $662 and a decree perpetually enjoining the defendant from further trespassing upon the right of way of county road No. 520 and requiring him to remove all of his equipment and property therefrom.

Costs and disbursements are awarded to plaintiff.