406 N.W.2d 674 (1987)
BOARD OF COUNTY COMMISSIONERS, McLEAN COUNTY, North Dakota, Plaintiff and Appellee,
v.
PETERSON EXCAVATING, INC., Defendant and Appellant.
Civ. No. 11274.
Supreme Court of North Dakota.
May 28, 1987.
*675 Merle A. Torkelson, State's Atty., Washburn, for plaintiff and appellee.
Gary H. Lee, of Bosard, McCutcheon & Rau, Minot, for defendant and appellant.
VANDE WALLE, Justice.
Peterson Excavating, Inc. (Peterson), has appealed from a judgment in favor of the Board of County Commissioners, McLean County (the County), for damages for repairing a paved highway injured by Peterson. We affirm.
The County paved County Highway 15 between Garrison and Lake Sakakawea in 1966. The County repaired the highway when needed and performed routine maintenance consisting of yearly sealing of "alligatored" areas and surface cracks.
In 1981, a marina construction project was begun at Fort Stevenson State Park, which required that gravel be hauled to the site over County Highway 15 in 1983. On March 1, 1983, the State imposed weight restrictions on North Dakota Highway 37, which intersects County Highway 15, and the County placed a Class II weight-restriction sign on the right side of County Highway 15. The State Highway Commissioner removed the weight restriction on Highway 37 on May 24, 1983. The County, however, did not remove the weight restriction or the sign from County Highway 15 until July because of abnormally wet conditions.
Peterson began hauling gravel over County Highway 15 on May 24, 1983, and completed its hauling on June 7, 1983. On May 24 and 25 Peterson hauled 143 loads that were each about 16,000 pounds over Class II restrictions. On May 25 Peterson reduced its loads at the request of the County highway superintendent, who informed Peterson that Class II restrictions were still in place. The next 163 loads hauled on May 25 and 26 were each about 6,000 pounds over Class II restrictions. Peterson thereafter hauled 890 loads that were each 1,000 to 2,000 pounds over Class II restrictions.
The County repaired County Highway 15 in the summer of 1983 at a cost of $12,734.90 and sued Peterson for damages in that amount. The trial court found Peterson 85 percent responsible for the damage to the road and judgment was entered against Peterson for $10,824.67, plus costs and disbursements.
Peterson has raised the following issues on appeal:
"1. Whether the Trial Court erred, as a matter of law, in determining that a party could be held liable to a County for damages done to a County highway if the party held liable was, at all relevant times, in compliance with State load restrictions, and there existed no valid County load restrictions.
"2. Whether the Trial Court's findings that the Defendant's activity proximately caused the damages to Plaintiff's roads, was clearly erroneous.
"3. Whether the Trial Court's findings that Defendant's activity proximately caused 85 percent of the damages to Plaintiff's roads, when there existed in the record no evidence to support such a finding is clearly erroneous."
The County did not impose Class II weight restrictions by enacting a resolution as required by § 39-12-03, N.D.C.C. Peterson was in compliance with the State's weight restrictions and asserts that because there was no resolution enacted there was no valid county restriction, and there can be no claim against it for damage to the highway. Under the circumstances of this case, we deem the lack of a resolution to be irrelevant.
Relying on § 1-01-06, N.D.C.C.,[1] § 1-02-01, N.D.C.C.,[2] and In re White, 69 N.D. 61, *676 284 N.W. 357, 358 (1939) ["if a particular statute is so designed that it covers the entire field to which it relates, it does so to the exclusion of the common law"], Peterson asserts that in enacting Ch. 39-12, N.D.C.C., "the legislature has set up a comprehensive plan relating to the setting of load limits for State and local highways," constituting an exclusive remedy precluding liability in a negligence action. We disagree.
Chapter 39-12, N.D.C.C., provides for the imposition of size, width, height, and weight restrictions on vehicles operated on public highways; special permits for vehicles of excessive size or weight; $10 and $20 fees for violations; and charges determined by the number of pounds by which a vehicle exceeds weight restrictions, with such charges appropriated for use by the State Highway Department. The chapter does not deal with compensation for damage to highways. As we observed in State ex rel. Hjelle v. A Motor Vehicle Described As a 1973 Brockway Tractor, Etc., 299 N.W.2d 557, 563 (N.D.1980), "[t]he charge under § 39-12-17, NDCC, is for extraordinary use of the highway, not for actual damage, and there is no burden on the state to prove actual damage." Thus, since Ch. 39-12 deals with extraordinary use of a highway and not with damage to a highway, the chapter does not preclude an action to recover damages for negligence in damaging a highway, at least where, as here, no statutory recovery has been attempted. To hold as Peterson urges would lead to the conclusion that one could knowingly destroy a county highway with a heavy vehicle and the county would have no recourse. We construe statutes to avoid absurd results. County of Stutsman v. State Historical Society, 371 N.W.2d 321 (N.D.1985).
In the early case of The Town of Troy v. The Cheshire R.R. Co., 23 N.H. 83, 98-99 (1851), the court said:
"If the bridge, erected by the town, and which they are bound to maintain, ... is destroyed, either wantonly or negligently, by others, the town may, upon what we think are unquestionable principles of common law and common justice, commence their suit against the wrong-doer, and recover all such damages as they have sustained by his wrongful act, ...
"These principles are of course equally applicable to any injury done to a highway, as to a bridge."
See also, Town of Newport v. Brewer, 566 S.W.2d 873 (Tenn.1978); Commonwealth v. Pine Coal Co., 414 S.W.2d 134 (Ky.App. 1967); Lincoln County v. Bruesch, 197 Or. 571, 254 P.2d 690 (1953); State v. F.W. Fitch Co., 236 Iowa. 208, 17 N.W.2d 380, 382 (1945) ["This common-law remedy is not necessarily superseded by statutes providing penalties or new remedies."]; 40 Am.Jur.2d Highways, Streets, and Bridges § 605 (1968); 40 C.J.S. Highways § 228 (1944).
On May 25, 1983, the County highway superintendent told Gerald Klimpel, the vice-president of Peterson, that Class II weight restrictions were still in effect. Klimpel then telephoned James Peterson, president of Peterson, who asked, "Are they really damaging the road?" and Klimpel said, "Yeah, there's gotta be three or four broken spots." Peterson then reduced the size of its loads and continued hauling. It is apparent from the foregoing testimony that Peterson knew that it was damaging the highway but continued to haul heavy loads, although of reduced size. This was an unreasonable use of the highway, subjecting Peterson to liability for damage caused thereby. We agree with the court in Town of Newport v. Brewer, supra, 566 S.W.2d at 876:
"The knowing subjection of a public street, highway or bridge to a use or load that it cannot accommodate and for which it was not designed by one who is *677 aware that such use is inflicting substantial damage thereto, must, in our opinion, be regarded as an unreasonable and, therefore, negligent use for which the user may be held liable."
We note that the Legislature has also provided, in § 24-12-01, N.D.C.C., that "[n]o person shall willfully ... break, or otherwise injure or destroy any public highway,... without first securing permission from the person or governing body having jurisdiction and control thereof."
The trial court found that Peterson's "heavily loaded trucks were the major and primary, although not the exclusive, cause of the road damage"; that "the condition of the road was adequate for normal vehicular use within the restricted load limits"; and that "other vehicular traffic proximately caused some damage to the road." Peterson asserts that the trial court's finding that it proximately caused damage to the road is clearly erroneous.
There was testimony that there was some preexisting deterioration of the highway, but that it was in "good," "normal," or "average" condition. While Peterson was not the only user of the highway, there was testimony that its loads were the heaviest. A civil engineer who was qualified as an expert testified that in his opinion it was "more probable than not that the excess weight" of Peterson's trucks caused the damage to the road. We conclude that the trial court's finding that Peterson damaged the road is not clearly erroneous.
The trial court found Peterson "85 percent responsible for the deterioration and damage to the road." Peterson asserts that that finding is clearly erroneous. The evidence supports the trial court's findings that Peterson's trucks were the "major and primary" cause of the damage and that other traffic caused "some" damage. In the unique circumstances presented in this case, where the County has suffered an apparently indivisible injury, the "major and primary" cause of which was Peterson's trucks, but "some" of which was caused by others unknown to an unknown extent, a precise apportionment of Peterson's responsibility is difficult at best. Our review of the record has not left us with a definite and firm conviction that a mistake has been made. Consequently, the trial court's finding is not clearly erroneous.
The County has asserted that the trial court should have found Peterson responsible for 100 percent of the damages and that it should be awarded $12,734.90. The County did not cross-appeal and may not seek a more favorable result on appeal than it received in the trial court. Burlington Northern R.R. Co. v. Scheid, 398 N.W.2d 114 (N.D.1986).
The judgment is affirmed.
ERICKSTAD, C.J., and GIERKE, MESCHKE and LEVINE, JJ., concur.
NOTES
[1] "1-01-06. Code excludes common law.In this state there is no common law in any case where the law is declared by the code."
[2] "1-02-01. Rule of construction of code.The rule of the common law that statutes in derogation thereof are to be construed strictly has no application to this code. The code establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be construed liberally, with a view to effecting its objects and to promoting justice."