# NEW YORK

# CRIMINAL REPORTS

## VOL. XXXVIII

SUPREME COURT — APPELLATE DIVISION —
THIRD DEPARTMENT.

June 30, 1919.

## CHENANGO COUNTY HUMANE SOCIETY v.
## POLMATIER.

(188 App. Div. 419.)

(1) ANIMALS—FAILURE TO FEED—IN POUND—DOES NOT RELATE TO ANIMAL
ON PREMISES OF OWNER—PENAL LAW, SECTION 187.*

Section 187 of the Penal Law, making it a misdemeanor to fail to pro-
vide proper food and drink to an impounded animal and providing that
any person may enter upon the pound and supply food and water under
certain conditions and that the owner shall be liable for the reasonable
cost of the food, does not relate to an animal on the premises of its
owner, but to one which has strayed from such premises and has been
distrained or impounded because of such straying or trespassing.

The statute does not relate to the owner of an animal but to one who
has distrained, impounded or caused to be confined such animal so stray-
ing or trespassing.

(2) SAME.

The clear purpose of the statute is to secure the necessities of life to
an impounded animal which has strayed from the possession of its owner.
until reclaimed by him.

* Derived from Penal Code, § 657. See Law 1867, ch. 375, § 4.

(3) POUND—PRIMARY SIGNIFICATION.

The pound is an ancient Anglo-Saxon institution and the primary and underlying signification and the dominant idea is that of an inclosure for the confinement of animals taken in trespassing or when running at large in violation of law, until they are reclaimed by their owner.

(4) SAME.

The statute applies both to a public pound and where straying cattle are confined in an inclosure on private land, with the intention of thereby impounding them.

JOHN M. KELLOGG, P. J., dissented, with memorandum.

APPEAL by the defendant, Percy A. Polmatier, as administrator c. t. a., from a judgment of the County Court of Chenango county, entered in the office of the clerk of said county on the 24th day of October, 1918, affirming a judgment of the City Court of Norwich in plaintiff's favor, and also from affirming said City Court judgment.

*Hubert L. Brown,* for the appellant.

*David F. Lee,* for the respondent.

COCHRANE, J.:

The deceased was the owner of a farm and had twenty cows thereon. A tenant was in possession of the farm and cows. Through the fault of the owner or tenant or both the cows were insufficiently supplied with food. A representative of the plaintiff went to the barn on the premises where the cows were being kept and supplied them with food. For the reasonable value of such food a judgment herein has been recovered.

Plaintiff bases its action on the following provision of the Penal Law:

"§ 187. Failure to provide proper food and drink to impounded animal. A person who, having impounded or confined any animal, refuses or neglects to supply to such animal during its confinement a sufficient supply of good and wholesome

air, shelter and water, is guilty of a misdemeanor. In case any animal shall be at any time impounded as aforesaid, and shall continue to be without necessary food and water for more than twelve successive hours, it shall be lawful for any person, from time to time, and as often as it shall be necessary, to enter into and upon any pound in which any such animal shall be so confined, and to supply it with necessary food and water, so long as it shall remain so confined; such person shall not be liable to any action for such entry, and the reasonable cost of such food and water may be collected by him of the owner of such animal, and the said animal shall not be exempt from levy and sale upon execution issued upon a judgment therefor."

In my opinion the foregoing statute has been misapplied. It does not relate to an animal on the premises of its owner but to one which has strayed from such premises and has been distrained or impounded because of such straying or trespassing. It does not relate to the owner of an animal but to one who has distrained, impounded or caused to be confined such animal so straying or trespassing. The clear purpose of the statute is to secure the necessities of life to a distrained animal which has strayed from the possession of its owner until reclaimed by him. To effectually accomplish this humane purpose the statute in question places the burden of the proper maintenance of such distrained animal during the period of its confinement on the person responsible for such confinement under the penalty of a misdemeanor if he fails in such duty, and to make assurance doubly sure the statute further gives to any person the right to furnish food to such an animal if the person causing its confinement fails in his duty in that respect and makes the expense thereof a charge both on the property and against the owner. Section 185 of the Penal Law makes the owner guilty of a misdemeanor if he neglects to furnish his animals with necessary sustenance. Section 187 was, therefore, unnecessary so far as the owner is concerned. Its purpose is as above indicated. For the accomplishment of this purpose it is among

other things provided in the second sentence of the section that if the animal is left by the person impounding it without necessary food and water for more than twelve successive hours, *any* person may "enter into and upon any pound" and supply such food and water, for which the owner then is made liable. It is to be observed that the entry must be into a *pound*—not on the premises or in a building or place—clearly indicating the purpose of the statute. It would be a distortion of the meaning of this word and a wide deviation from its ordinary significance to make it apply to a field of an owner on which his cattle might be lawfully grazing or to a barn or other building on his farm wherein the cattle might be kept. That is the present case. The agent of the plaintiff entered the barn of the defendant and there supplied food to his cattle. If he could do that he could have supplied them with food if they had been grazing in a meadow provided their supply of food was insufficient, and the statute certainly does not mean that if one person observes that his neighbor is not properly caring for his cattle the former may take the matter in his own hands and supply them with appropriate food at the expense of the owner.

The "pound" is a very ancient institution. Perhaps it is as old as any Anglo-Saxon institution which has come down to us. Modern civilization has largely outgrown its necessity and its usefulness. Nevertheless it has a recognition and standing in our statutes. (Town Law [Consol. Laws, chap. 62; Laws of 1909, chap. 63], arts. 20, 21.) The word has a well-understood legal meaning. It is defined in Bouvier's Law Dictionary [Rawle's Rev.] as follows: "A place, enclosed by public authority, for the temporary detention of stray animals." "Impound" is defined by the same authority as follows: "To place in a pound goods or cattle distrained or astray." While it is true that some lexicographers give a figurative or secondary meaning to the term, I think the primary and underlying signification and the dominant idea is that of an inclosure for the confinement of animals taken in trespassing or when run-

ning at large in violation of law until they are reclaimed by their owner. A clear and comprehensive statement of the legal significance of a pound is contained in the New International Encyclopedia, under the word "Pound" as follows: "An inclosure for the temporary confinement of stray animals. Where domestic animals stray upon the public highways, or upon the land of individuals, any person injured thereby may take possession of and impound them, *i. e.,* detain them in a pound until the owner pays him for any damage they may have caused. A pound may be one established by law, known as a public or common pound; or where there is no public pound, a person on whose land cattle or other domestic beasts stray may confine them in an inclosure on his own land, with the intention of thereby impounding them. In the latter case, the person so confining the animals is responsible for them. To obtain a release of the beasts the owner must pay him for their keep, as well as for the damage they have done."

It is not necessary to hold that section 187 of the Penal Law applies only to a public pound. In fact there is not in every municipality a public pound. But the statute (Town Law, arts. 20, 21) makes provision for the disposition and treatment of trespassing or strayed animals whether there is or is not a pound. Title 10 of chapter 19 of the Code of Civil Procedure also contains minute provisions for the care and disposition of such an animal without reference to a public pound. In all such cases if one confines such cattle either in a public pound or as stated in the encyclopedia (*supra*) "in an inclosure on his own land, with the intention of thereby impounding them," the law intends that the animals shall be humanely treated while out of their owner's possession and makes provision whereby the expense of such treatment whether incurred by the person responsible for their confinement or by another under proper circumstances, shall be chargeable against the owner and the property itself. It is to such a situation that section 187 of the Penal Law applies.

It is not contended that the judgment can be sustained on any other ground.

The judgment of the City Court and County Court should be reversed, with costs.

All concurred, except JOHN M. KELLOGG, P. J., dissenting, with a memorandum.

JOHN M. KELLOGG, P. J. (dissenting) :

A mere volunteer cannot force his services or property upon another and exact payment therefor. There must be a request, express or implied. The party sought to be charged in some way must have invited the service. Here, concededly, the original defendant, the owner of cattle, left them without food; some died of starvation; others became so poor and weak that they fell down and had to be helped up, and evidently the life of the herd was at stake. Said defendant was violating the law and every instinct of humanity. He voluntarily created a situation which compelled plaintiff to act. Such conduct on his part, in my judgment, may be construed as a request to any willing person to grant reasonable relief to the starving animals. A man wrongfully refuses to support his dependent wife or children and a neighbor furnishes such support; the law considers the abandonment a request to furnish them maintenance. They carry his credit with them for necessities. A man of means refuses to bury his deceased infant son, a member of his family; a neighbor who performs the service may recover upon the theory that the conduct of the father was a request to give a reasonable burial to the son. In this case the necessity was such that, in my judgment, the plaintiff may recover upon *quantum meruit*. Such a position is not inconsistent with the complaint. It might have alleged a sale and delivery of the hay at defendant's request; instead of that it showed, in substance, that the defendant was allowing his cattle to starve and the plaintiff, as an act of humanity, came to their relief. The allegation as to the pound and the implied reference to

section 187 of the Penal Law may be disregarded as surplusage. I favor an affirmance.

Judgment of County Court and City Court reversed, with costs.