STATE of North Dakota ex rel. W. R. HJELLE, Highway Commissioner, Plaintiff and Appellee,

v.

A MOTOR VEHICLE DESCRIBED AS A 1973 BROCKWAY TRACTOR LICENSE NO. 237342, SERIAL NO. 79629, TRAILER SN # 75–2531–LB–150, Defendant and Appellant.

Civ. No. 9769.

Supreme Court of North Dakota.

Nov. 3, 1980.

Reichert, Howe, Hardy, Galloway & Jorgenson, Dickinson, for plaintiff and appellee; no appearance.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendant and appellant; argued by Paul G. Kloster, Dickinson.

SAND, Justice.

The defendant truck appealed from a judgment resulting from an action brought pursuant to Chapter 39–12, North Dakota Century Code, by the State of North Dakota on relation of the Highway Commissioner, to recover charges for the extraordinary use of a highway by a vehicle exceeding the legal weight requirements.

On 23 May 1979 at approximately 9 o'clock a.m., the defendant truck owned by Candee Construction Co. and operated by Richard Krieter, was observed on Highway 22 at a point just north of the intersection of Highway 22 and Interstate 94 near Dickinson, North Dakota. The truck was observed and stopped by Richard A. Koehler of the North Dakota Truck Regulatory Division. Koehler weighed the truck and determined it to be 33,300 pounds[1] overweight. The president of Candee Construction, Douglas Candee, was notified and Mr. Candee, Mr. Koehler, and a Stark County assistant state's attorney met to discuss the matter at approximately 11 o'clock a.m. on 23 May 1979. Later that day Mr. Candee deposited $2,450.00 in cash with the clerk of the Stark County district court. The clerk issued a receipt showing the deposit was for

the purpose of "bond (appearance)." The money was then delivered to the office of the Stark County treasurer, and a receipt was issued for "appearance bond *State vs. Candee Construction.*"

Sometime prior to the 11 o'clock discussion, the cargo of the truck, a D–9 Caterpillar, was removed from the trailer without authorization of the truck regulatory department. (This is not an issue in the instant case.) The truck and trailer remained under the control of the truck regulatory personnel during the discussions and was transferred to the Highway Department Building[2] until its release later that day when the money was deposited.

The Highway Commissioner filed a complaint with the district court on May 30, 1979, pursuant to § 39–12–14, NDCC.

Defendant truck answered, alleging that oral permission was obtained from the highway department to operate the vehicle on the road in question; that no, or only minimal, damage was caused to the highway by defendant's use; that the road was under contract for reconstruction, and for that reason the damage would be minimal; and that the penalty imposed by the statute was unconscionable under the circumstances and unenforceable; and that the imposition of the penalty would violate the constitutional guarantees of the defendant.

The district court entered judgment dated 30 Jan. 1980 ordering an assessment of $2,404.00[3] against the defendant truck. The defendant truck appealed that judgment to this court. We affirm.

The defendant truck raises several issues on appeal. The first issue concerns whether or not certain statutory procedures granting jurisdiction to the district court were followed.

1. The tandem axle on the rear of the truck was 10,000 pounds overweight, and the triple axle on the rear of the trailer was 23,300 pounds overweight. At the time of the weighing, the cargo on the truck was a D-9 caterpillar.

2. The Highway Department Building is adjacent to the road on which the truck was stopped.

3. Pursuant to § 39 12 17, NDCC, the fee for the extraordinary use of the road was calculated to be $2,374.00. An additional $30 was assessed for costs.

In conjunction with this issue, defendant truck asserts that because these statutory procedures were not strictly complied with, jurisdiction over the truck did not attach. Alternatively, defendant truck asserts that even if jurisdiction did originally attach, continuous jurisdiction over the truck was not maintained.

■ A brief review of these statutes and case law interpreting them will be helpful to understand the procedure involved in this action. Section 39–12–11, NDCC, permits the impounding of any vehicle exceeding legal weight requirements. Section 39–12–12, NDCC, provides that an impounding receipt shall be given by the officer impounding the vehicle to the driver or the person in charge of the vehicle. Section 39–12–14, NDCC, directs the highway commissioner, with the assistance of the attorney general or state's attorney, to prepare and file a civil complaint for the purpose of recovering charges for the extraordinary use of the highways. The impounding of the vehicle is the equivalent of process and gives the court jurisdiction of the res upon the filing of a complaint. *Wentz v. One White Diesel Three–Ton Tractor*, 110 N.W.2d 178 (N.D.1961). The vehicle is both the res and defendant. *Wentz, supra.* Section 39–12–15, NDCC, provides that a copy of the complaint shall be served upon the driver or person in charge of the vehicle and a copy shall be sent by registered or certified mail to the owner of the vehicle. Section 39–12–16, NDCC, provides that unless a cash bond shall be furnished in amount sufficient to cover the charges for the extraordinary use of the highway the vehicle shall be held until a trial of the case can be had before the district court. Under these provisions, the vehicle must remain impounded unless a cash bond is furnished and if the bond is furnished, the vehicle is released, but the jurisdiction of the court continues over both the cash and the vehicle. *Wentz, supra.*

The defendant truck asserts there are several fatal defects in the district court's jurisdiction. The first defect asserted by the defendant truck is that the vehicle was never impounded,[4] and therefore, the equivalent of process was not met and there could be no jurisdiction over the truck upon the filing of the complaint. The defendant truck asserts that the technical attributes of an impoundment equivalent to process require that the vehicle be taken to a warehouse or garage for storage and that an impoundment receipt be issued.[5] We are unwilling to put such a technical requirement on the word "impoundment."

The rules of statutory construction require us to interpret words used in any statute in their ordinary sense, unless a contrary intention plainly appears. Section 1–02–02, NDCC. Any words explained in the code are to be understood as explained, § 1–02–02, NDCC. This Court has consistently held that statutes must be construed to avoid absurd results, e. g., *State v. Mees*, 272 N.W.2d 61 (N.D.1978).

The term "impoundment" is not explained in Ch. 39–12, NDCC, and there is nothing in that chapter to indicate that the term should be interpreted in anything other than its ordinary sense.

The term "impoundment" traces back to the Anglo-Saxon era and refers to shutting up of stray animals in a pound. Webster's New World Dictionary (2nd College Ed. 1980). The term contemplates providing

---

**4.** The parties stipulated to several facts. As to the issue of "impoundment" the stipulation reads as follows:

"That Mr. Koehler informed Mr. Candee that he would not impound the vehicle but that he did not allow the free use of that motor vehicle; that he would give Mr. Candee until 4:00 on that date to post the required cash bond. Mr. Koehler told Mr. Candee that the vehicle was not being impounded and at that same time the vehicle was

brought down to the State Highway Department and was left there."

This part of the stipulation was read into the record by the assistant state's attorney. The attorney for the defendant truck made one correction pertinent to this part of the stipulation. This correction was that the money deposited did not meet the requirements of a "cash bond."

**5.** The parties stipulated that no impoundment receipt was issued in this instance.

food and shelter for animals until reclaimed by the owner. *Chenango County Humane Society v. Polmatier*, 188 App.Div. 419, 177 N.Y.S. 101 (1919). Upon reclaiming the animal the owner would have to pay for the animal's keep and any damage the animal may have done. *Chenango County Humane Society v. Polmatier, supra.* This definition is not applicable to situations involving inanimate objects such as motor vehicles.

■ We believe that impoundment, as contemplated by Ch. 39–12, NDCC, simply requires that the vehicle be held in legal custody. To require more would lead to absurd results when, as in this instance, the owner of the vehicle wanted to regain use of the vehicle as quickly as possible.. The equivalent of process is satisfied by holding the vehicle in legal custody. In the instant case, the truck regulatory department had the defendant truck in legal custody from the time it was stopped and weighed until after the receipt of the cash deposit. Thus, we believe that during this time there was an impoundment in compliance with Ch. 39–12, NDCC, and jurisdiction over the truck had attached.

■ Defendant truck asserts that continued jurisdiction was lost in this instance because no cash bond was furnished to preserve the court's jurisdiction when the truck was released from custody. The vehicle must be held until trial to preserve the court's jurisdiction, unless a cash bond is furnished. Section 39–12–16, NDCC. If the bond is furnished the vehicle is released from impoundment and the court's jurisdiction continues over both the cash and the vehicle. *Wentz, supra.*

Defendant truck asserts that the "cash deposit" made in this instance was not a "cash bond." The testimony concerning the purpose of the deposit was disputed. Mr. Koehler testified that Mr. Candee was informed that a cash bond would have to be posted and that it would have to be large enough to cover the extraordinary road use fee for the vehicle plus court costs. Mr. Koehler also testified that Mr. Candee was informed that the money would have to be deposited with the clerk of court to secure the release of the vehicle. Mr. Candee testified that he understood that the purpose of the cash deposit was to pay for any damage done to the road as a result of the incident and as a condition for the release of the truck. However, no procedure or statutory authority has been cited which authorizes any official to receive money for actual injury or damage to a road.

Defendant truck relies heavily on *Wentz, supra,* to support its position that the cash deposit was not a cash bond. *Wentz* is distinguishable on this point. In *Wentz* a "document in the nature of a surety bond" was provided and the vehicle was released. The surety bond provided if a judgment was rendered against the truck owner, the surety would pay the judgment. The truck owner was not a party to the action and no judgment was rendered against the owner. Thus, the surety bond was not satisfied. The *Wentz* court found that the surety bond did not satisfy the cash bond requirement and continuous jurisdiction was lost. We believe that because a cash deposit, and not an obligation in the form of a surety bond, was supplied in this instance, the holding of *Wentz* is not applicable to this case. Defendant truck also asserts that because the obligor on the cash deposit was Candee Construction, a non–party against whom no judgment was entered, the holding of *Wentz* is applicable. The basis of this assertion is the inscriptions made by the clerk of the Stark County district court and the Stark County treasurer on the receipts issued. However, there has been no showing that the people making these notations were authorized to name Candee Construction as an obligor on the deposit receipt.

We believe that the condition of the cash deposit to obtain the release of the truck was sufficient to comply with the cash bond requirement contemplated by Ch. 39–12, NDCC, and the district court properly had jurisdiction over this matter. The significant factor here is that a cash deposit was made as a condition for the release of the truck, and not who furnished or deposited the cash.

■ The second issue defendant truck raises on appeal is whether or not the statewide load restrictions order promulgated pursuant to § 39–12–03, NDCC, was complied with. The statute provides in part as follows:

" . . . The commissioner or employee making such order . . . shall erect or cause to be erected and maintained signs designating the provisions of the order . . . . Such signs shall be erected and maintained at each end of that portion of any highway affected thereby, and such order . . . shall not be effective until such signs are erected and maintained . . . . "

Defendant truck construes this statute to require that the highway commissioner's evidence shows that there were load restriction signs at each end of the road in question. Defendant truck asserts that the Highway Commissioner's evidence reflects that there was a sign at one end of the road but the evidence is deficient as to whether or not there was a sign at each end of the road. The record reflects that on this trip the truck entered the road by the sign that was shown to exist and that Douglas Candee was aware of the load restrictions. Although the evidence presented does not reveal whether or not there were signs at each end of the road, we do not believe this technical failure of proof is fatal to the commissioner's case where the evidence shows, as it does here, that signs were posted at the place of the truck's entry. Obviously, the statute is concerned with notice of restrictions which was present in this instance.

The third issue raised by defendant truck is that the trial court clearly erred in failing to find that Douglas had received oral permission to move the overweight vehicle on this road.

■ The scope of review of the trial court's findings on an appeal to this court on a case tried without a jury is limited by Rule 52(a), North Dakota Rules of Civil Procedure, which provides, in part:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to to the opportunity of the trial court to judge the credibility of the witnesses."

The trial court's findings of fact are "clearly erroneous" when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Keidel v. Rask*, 290 N.W.2d 255 (N.D.1980). The mere fact that an appellate court might have viewed the facts differently if it had been the initial trier of the case does not entitle it to reverse the lower court. *In re Estate of Elmer*, 210 N.W.2d 815 (N.D.1973). Our review of the record indicates that there was conflicting evidence presented at trial on the question of whether or not the oral permission was given to Mr. Candee. We conclude that the evidence supports the finding of the trial court and, therefore, is not clearly erroneous.

The last issue raised by the defendant truck on appeal is that imposition of the fee for the extraordinary use of the highway was unconstitutional, unenforceable, and illegal.

■ A statute is conclusively presumed to be constitutional unless it is clearly shown that the statute contravenes state or federal constitutions. *Dorgan v. Kouba*, 274 N.W.2d 167 (N.D.1978); § 1–02–38, NDCC. The right of a citizen to operate a motor vehicle on public highways is a privilege subject to the reasonable regulation under the police power of a state in the interest of public safety and welfare. *Blow v. Commissioner of Motor Vehicles*, 164 N.W.2d 351 (S.D.1969); *State v. Seraphine*, 266 Wis. 118, 62 N.W.2d 403 (1964). The State under its police power may subject its highways to reasonable regulations and weight restrictions. *Morris v. Duby*, 274 U.S. 135 (1927); *State v. Dried Milk Products Co–op.*, 6 Wis. 357, 114 N.W.2d 412 (1962).

■ Defendant truck asserts that in this instance the fine imposed would be unduly harsh because it was for a one–mile trip on a road under construction when no actual damage was found to have occurred to the

road. The charge under § 39–12–17, NDCC, is for extraordinary use of the highway, not for actual damage, and there is no burden on the state to prove actual damage. The charge is not assessed on the basis of the number of miles driven on the road, but rather is assessed on a pro rata basis for exceeding the legal weight restriction. We believe this is a reasonable manner for a state to police the weight requirements for its highways and, whether or not the pro rata charges are excessive is a matter best left to the Legislature.

We believe it has not been clearly shown that the pro rata charges for extraordinary use of the highways violates provisions of the state or federal constitutions.

The decision of the district court is affirmed.

ERICKSTAD, C. J., VANDE WALLE, PEDERSON and PAULSON, JJ., concur.