OPINION OF THE COURT
John A. Schuppenhauer, J.
Defendant was charged with the unclassified misdemeanor of failure to provide proper food and drink to an impounded animal (three counts), in violation of section 356 of the Agriculture and Markets Law. Counsel for the defendant has filed omnibus pretrial motions under article 255 of the Criminal Procedure Law, seeking, inter alia, a dismissal of the information as facially insufficient, pursuant to CPL article 170.
The Facts
The information alleges that the defendant violated Agriculture and Markets Law § 356 on the first day of September 2016, at 225 West Avenue in the City of Canandaigua, County of Ontario and State of New York, in that she did
“neglect to supply three pit-bull mix dogs, named Athena, Buddy and Meeko, with a good supply of wholesome air, food and water and did confine them in an upstairs bedroom where there was fresh and old feces on the floor and furniture in the room. The air inside the bedroom smelled of feces and urine and was consistent throughout the residence.”
Photographs of the three dogs that are part of the information seem to depict three rather healthy looking animals.
The supporting deposition of Sean Power alleges that he assists the manager of the property at 225 West Avenue, Canan-daigua, where defendant and Shadde Manhart were tenants. He alleges that on August 24, 2016, he received a call from the defendant, who was upset about being arrested, but he couldn’t understand her. He alleges, further, that the next day he received a call from defendant’s roommate, Shadde Manhart, who told him that he and the defendant had been arrested and needed help “letting the dogs.” Power also indicates that he received a call from defendant’s aunt Tammy on August 26 “in regards to taking care of the dogs” and further indicating that “Kristy Meadows and Brand (?) have been over together to feed *699 the dogs.” He goes on to say in the supporting deposition that the next time he entered the property was on Sunday, August 28, 2016, and the dogs at that time were in good condition.
The defendant moves to dismiss the information for facial insufficiency under CPL 170.30, on the theory that there are no allegations of lack of food, water, shelter, or fresh air, and that the supporting deposition indicates that the dogs were “in good condition.” The People argue that the allegations of both instruments, taken together, provide a sufficient basis to establish each and every element of the crime, and request, in the alternative, that should the motion to dismiss be granted, that the dismissal be without prejudice to refile a superseding or amended information under CPL 100.45 and 100.50.
The Law
Section 170.30 of the CPL provides that after arraignment, a local criminal court may, upon motion by a defendant, dismiss an information upon the ground that it is defective within the meaning of CPL 170.35. An information is defective within the meaning of section 170.35 if it is insufficient on its face as defined in CPL 100.40. An information is sufficient on its face when the allegations provide reasonable cause to believe that the defendant committed the offense charged and when non-hearsay allegations establish, if true, every element of the offense charged and the defendant’s commission thereof (CPL 100.40; People v Dumas, 68 NY2d 729 [1986]). The allegations must be nonhearsay (CPL 100.40 [1] [c]; People v Alejandro, 70 NY2d 133 [1987]). Because the purpose of requiring corroborating facts as to all elements of a crime alleged for a valid, facially sufficient information is to ensure that “the factual allegations of an information give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly restrictive or technical reading” (People v Casey, 95 NY2d 354, 360 [2002]).
The section under which defendant is charged, section 356 of the Agriculture and Markets Law, provides that
“[a] person who, having impounded or confined any animal, refuses or neglects to supply to such animal during its confinement a sufficient supply of good and wholesome air, food, shelter and water, is guilty of a misdemeanor, punishable by imprisonment for not more than one year, or by a fine of not more *700 than one thousand dollars, or by both. In case any animal shall be at any time impounded as aforesaid, and shall continue to be without necessary food and water for more than twelve successive hours, it shall be lawful for any person, from time to time, and as often as it shall be necessary, to enter into and upon any pound in which any such animal shall be so confined, and to supply it with necessary food and water, so long as it shall remain so confined; such person shall not be liable to any action for such entry, and the reasonable cost of such food and water may be collected by him of the owner of such animal, and the said animal shall not be exempt from levy and sale upon execution issued upon a judgment therefor.”
To survive the motion to dismiss, the People must sustain their burden of alleging each and every element of this offense together with the defendant’s commission thereof. The first element of the offense is that the person “impounded or confined any animal.” Article 26 of the Agriculture and Markets Law addresses the care of animals. The initial section of article 26, namely section 350, contains definitions pertinent to the article. Section 350, however, contains no definition for “impound” or “confine,” nor is there a definition for either of those terms in article 1, the introductory section to the Agriculture and Markets Law, at section 2. Section 5.00 of the Penal Law, which relates to the construction of penal statutes (of which Agriculture and Markets Law § 356 is one, for it provides for imprisonment for up to one year), provides that “[t]he general rule that a penal statute is to be strictly construed does not apply to this chapter, but the provisions herein must be construed according to the fair import of their terms to promote justice and effect the objects of the law.”
The word “impound” commonly refers to incidents where property is confined, sequestered, seized, or held in custody. This word, particularly with respect to animals, is related to the word “pound.” Historically, this word denoted a public enclosure for stray or mistreated dogs (i.e., “dog pound”). Section 332 of the Agriculture and Markets Law (which is within article 25-B, entitled “Abandoned Animals”) refers to the term “pound” and provides some insight in this regard. It provides that
“[a]ny person having in his or her care, custody, or control any abandoned animal, as defined in sec *701 tion three hundred thirty-one of this article, may deliver such animal to any duly incorporated society for the prevention of cruelty to animals or any duly incorporated humane society having facilities for the care and eventual disposition of such animals, or, in the case of dogs, cats and other small animals, to any pound maintained by or under contract or agreement with any county, city, town, or village within which such animal was abandoned. The person with whom the animal was abandoned shall, however, on the day of divesting himself or herself of possession thereof, notify the person who had placed such animal in his or her custody of the name and address of the animal society or pound to which the animal has been delivered, such notice to be by registered letter mailed to the last known address of the person intended to be so notified. If an animal is not claimed by its owner within five days after being so delivered to such duly incorporated society for the prevention of cruelty to animals, duly incorporated humane society or pound, such animal may at any time thereafter be placed for adoption in a suitable home or euthanized in accordance with the provisions of section three hundred seventy-four of this chapter. In no event, however, shall the use of a decompression chamber or decompression device of any kind be used for the purpose of destroying or disposing of such animal” (Agriculture and Markets Law § 332 [emphasis added]).
The word “pound” in this section is thus associated with a facility that is operated by or operated under contract with a municipality. Notably, this section of the Agriculture and Markets Law also refers to “[a]ny person having in his or her care, custody, or control,” and also “society for the prevention of cruelty to animals” or “duly incorporated humane society,” having “facilities for the care and eventual disposition of such animals.” Section 117 of the Agriculture and Markets Law also provides insight into the legislature’s intended use of the term “impoundment,” providing that owners of dogs “seized” by dog control officers can be assessed “impoundment fees.”
The term “confinement” is usually associated with the restraining, keeping or holding of a person (or animal) in a space or area. While pet dealers are regulated under article 27 of the Agriculture and Markets Law, dog “kennels” do not seem to be. *702 Kennels are commonly known to be places where, for a fee, owners may voluntarily take their animals to be housed temporarily while away or unable to care for them. Kennels essentially “confine” and care for animals for their owners. Section 373 of the Agriculture and Markets Law gives powers to an animal control officer to seize an animal improperly “confined or kept.” A distinction here is made between “confining,” associated with the voluntary restraint of an animal for compensation, and “keeping,” associated with the voluntary caring for an animal (i.e., by the owner, friend or family member) without compensation.
The Agriculture and Markets Law thus distinguishes individuals having animals in their care, custody and control, from public and not-for-profit organizations having facilities for the care and eventual disposition of animals, and from kennels where animals are confined for compensation. It appears that the legislature has drawn a distinction in the enactment of a separate section of the Agriculture and Markets Law (§ 353) imposing criminal penalties for “failure to provide proper sustenance,” which specifically provides:
“A person who overdrives, overloads, tortures or cruelly beats or unjustifiably injures, maims, mutilates or kills any animal, whether wild or tame, and whether belonging to himself or to another, or deprives any animal of necessary sustenance, food or drink, or neglects or refuses to furnish it such sustenance or drink, or causes, procures or permits any animal to be overdriven, overloaded, tortured, cruelly beaten, or unjustifiably injured, maimed, mutilated or killed, or to be deprived of necessary food or drink, or who wilfully sets on foot, instigates, engages in, or in any way furthers any act of cruelty to any animal, or any act tending to produce such cruelty, is guilty of a class A misdemeanor and for purposes of paragraph (b) of subdivision one of section 160.10 of the criminal procedure law, shall be treated as a misdemeanor defined in the penal law.”
This section refers to all individuals, including owners, and proscribes depriving any animal of “necessary sustenance, food or drink” or neglecting or refusing “to furnish it such sustenance or drink.” Section 353 of the Agriculture and Markets Law appears to have been enacted to address owners, people who are caring for animals with the owner’s consent, and people who *703 otherwise abuse animals. Section 356, on the other hand, appears to have been enacted to address pounds, kennels, or places where animals are “confined.”
The clear purpose of former Penal Law § 187, the predecessor to section 356 of the Agriculture and Markets Law, was to secure the necessities of life to an impounded animal which has strayed from the possession of its owner, until reclaimed by him or her (Chenango County Humane Socy. v Polmatier, 188 App Div 419 [3d Dept 1919]). In that case, the Appellate Division found that the statute did not relate to animals on the premises of their owners.
It has been held that, in order to sustain a conviction under Agriculture and Markets Law § 356, only one, not all of the elements listed have to be proved (i.e., air, food, shelter, water) and that to convict a defendant under the cruelty-to-animals statute, the defendant must have a culpable state of mind, even though the statute does not contain words requiring culpability. It is not necessary to prove that wrongful acts, as defined by the cruelty-to-animals statute, were done maliciously (People v O’Rourke, 83 Misc 2d 175 [1975]). In People v Curcio (22 Misc 3d 907 [Crim Ct, Kings County 2008]), the court, in examining the sufficiency of an information under section 353 of the Agriculture and Markets Law (alleging medical neglect), determined that an allegation of lack of action in the face of knowledge of an obvious mass on an animal was adequate. Further insight into the proscribed culpable state of mind appears in section 350 (2) of the Agriculture and Markets Law, which defines “[t]orture” or “cruelty” to include “every act, omission, or neglect, whereby unjustifiable physical pain, suffering or death is caused or permitted.” The mens rea that is thus required is the conscious knowledge or awareness that acts or omissions or failures would result in harm to the animal.
Decision
Section 356 of the Agriculture and Markets Law does not apply to individual persons; rather it applies to “pounds” operated by not-for-profit organizations, or kennels, where animals are confined for hire. Even were Agriculture and Markets Law § 356 to apply to individuals, under no construction of the facts here could the charge be sustained, as it clearly appears that the animals were properly cared for in defendant’s apartment up to the point where she was forcibly detained and unable to *704 return to her apartment. Defendant and her roommate, as it appears, made erstwhile efforts to secure care of the animals through other persons, and it was the circumstances (the failure or inability of those people to let the dogs outside) that led to the conditions that were observed by law enforcement authorities on the date alleged in the information (apparently several days after defendant’s incarceration and defendant’s call for assistance for the dogs). Furthermore, the photographs of the animals in the information and the statements in the supporting deposition support the conclusion that no harm had come to the animals (even though there was a risk that harm may have been imminent—and there appears to have been no way defendant could have known or had control over this).
Parenthetically, it appears that under the allegations in the information and supporting deposition, a charge under section 353 of Agriculture and Markets Law could not sustain a CPL 170.30 motion. Defendant simply did not have a culpable state of mind, as she exerted her best efforts to secure care for the dogs immediately after she was taken into police custody. Any neglect of the animals was not due to her acts or omissions, but rather was in spite of them. Further, there is no evidence that the animals suffered any harm.
The information is therefore dismissed with prejudice, and the People’s application for leave to file an amended or superseding information is denied, as the People have had adequate time and opportunity, in the face of the motion, to amend or to withdraw and re-file the information.